USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/23/2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CALIPH AMILCAR BEY WILSON EL,

                Plaintiff,

-against-

CITY OF NEW YORK; BILL DE BLASIO;
WILLIAM JOSEPH BRATTON; DANIEL
OMAHONEY; BRIAN K. GARCIA,

                Defendants.

14-cv-9055-GHW

MEMORANDUM OPINION
AND ORDER

GREGORY H. WOODS, District Judge:

      Plaintiff Caliph Amilcar Bey Wilson El brings this *pro se* action under 42 U.S.C. § 1983, alleging that on June 21, 2013, police officers stopped his car on the pretext that he had not used his turn signal, searched his car in violation of his Fourth Amendment rights, falsely arrested him, and then maliciously prosecuted him. He sues arresting officers Daniel Omahoney and Brian K. Garcia, New York City Police Commissioner William Joseph Bratton, Mayor Bill de Blasio, and the City of New York. This matter comes before the Court on the motion of the City of New York[1] to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, the motion is granted.

---

[1] According to the City of New York, it is the only Defendant that has been served with the summons and complaint. Moreover, Plaintiff has not filed proof of service as to any Defendant, including the City of New York. Given that Plaintiff filed the complaint in this case on November 13, 2014, his entire action is subject to dismissal under Fed. R. Civ. P. 4(m) for failure to timely serve the summons and complaint or failure to timely file proof of such service. *See* Fed. R. Civ. P. 4(m) ("If a defendant is not served within 120 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time."); *Reid ex rel. Roz B. v. Freeport Pub. Sch. Dist.*, No. 14-CV-4215 ADS GRB, 2015 WL 869009, at *3 (E.D.N.Y. Mar. 2, 2015) ("A plaintiff is also required to file proof of such service. The district courts in this circuit have generally interpreted Rule 4(m) to require plaintiffs to do so within the aforementioned 120-day period." (citation omitted)). Nonetheless, because the Court concludes that Plaintiff's complaint fails to state a cause of action, the Court elects to decide the City of New York's motion on the merits. The Court's analysis warrants dismissal of Plaintiff's claims against all Defendants, including the individual defendants who have not been served.

**BACKGROUND**

For purposes of this motion only, the Court accepts the following facts as true. At midday on June 21, 2013, Plaintiff was driving on Greenwich Avenue, between 10th Street and Perry Street in Manhattan. Compl. (ECF No. 1) at 7. A police car behind him flashed its lights, and Plaintiff pulled over. Police Officers Daniel Omahoney and Brian Garcia approached Plaintiff "with their hands on their guns," and Plaintiff "feared for his life." *Id.* at 8. Officer Omahoney "demanded" that Plaintiff lower his window and then asked for his driver's license, registration, and insurance card. Plaintiff asked Officer Omahoney why he was being stopped, and Officer Omahoney responded that Plaintiff "had failed to indicate a turn before changing lanes and turning." *Id.* Plaintiff countered that he *had* used his "blinker before switching lanes and turning." *Id.*

Officer Omahoney then turned to Officer Garcia and asked, "Do you smell that?" *Id.* Officer Garcia responded that he did not smell anything. Officer Omahoney told Plaintiff, "If you have some weed[,] it's OK[,] you can show me[.] I'll just give you a summons[. T]hat's better than having me trash your whole car." *Id.* Plaintiff responded that he "did not have any weed[.]" *Id.* Officer Garcia then said, "Just give us what you have so we don't have to search your whole car." *Id.* at 8-9. Plaintiff did not consent to a search of his car. *Id.* Officer Omahoney reached through the window and took the car keys. He then opened the door and "forced Plaintiff . . . to get out of his vehicle." *Id.* Plaintiff was handcuffed and made to stand at the rear of the car while the officers searched it. *Id.* The officers then "falsely arrested [him]." *Id.* Officer Omahoney "gave false statements and charges against Plaintiff . . . in the Supreme court of the State of New York, New York [County]. . . case No. 2013-NY-048728 in criminal court." *Id.* at 10.

Plaintiff filed this action on November 13, 2014, seeking injunctive relief and damages. On December 10, 2014, Plaintiff pled guilty in the New York Supreme Court, Criminal Term, to the felony charge against him for criminal possession of a controlled substance in the fourth degree,

2

N.Y. Penal Law § 220.09.06.  *See* Decl. of Joseph Martullo (ECF No. 14) at Ex. A (Certificate of Disposition of Indictment).  On February 18, 2015, Plaintiff was sentenced in that action to probation for five years.  *See People v. Wilson*, No. 2013-NY-048728.

## STANDARD OF REVIEW

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Freidus v. Barclays Bank PLC*, 734 F.3d 132, 137 (2d Cir. 2013).  To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action will not do"; rather, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  *Pro se* litigants are not exempt from these pleading standards, but courts are "obligated to construe a *pro se* complaint liberally."  *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).  *Pro se* complaints are read with a "special solitude" to raise the "strongest [claims] that they suggest." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citations omitted).

In applying these principles, the Court may consider facts alleged in the complaint and documents attached to it or incorporated by reference.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (internal quotation marks and citation omitted).  "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Id.* (internal citation omitted).

**DISCUSSION**

The Court liberally construes Plaintiff's complaint as asserting claims under 42 U.S.C. § 1983 for malicious prosecution, false arrest, and violations of Plaintiff's Fourth Amendment right to be free from unreasonable search and seizure, as well as assorted state law claims. Defendant City of New York moves to dismiss the federal claims on three grounds.[2] First, Defendant contends that Plaintiff's claims are barred by the favorable termination rule set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994). Second, Defendant asserts that collateral estoppel bars Plaintiff from litigating issues already determined in his state criminal conviction. Finally, Defendant moves to dismiss under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978), arguing that Plaintiff fails to plead any facts showing that the City of New York caused any violation of Plaintiff's rights.

**A. Malicious Prosecution**

A malicious prosecution claim under § 1983 borrows the elements of a malicious prosecution claim under state law. *Hygh v. Jacobs*, 961 F.2d 359, 366 (2d Cir. 1992). New York law requires a plaintiff asserting a malicious prosecution claim to prove "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003) (internal quotation marks omitted). Thus, "[m]alicious prosecution suits require, as an element of the offense, 'the termination of the proceeding in favor of the accused.'" *Poventud v. City of New York,* 750 F.3d 121, 130 (2d Cir. 2014) (citation omitted); *see also Heck*, 512 U.S. at 484 ("One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused.").

---

[2] Defendant moves to dismiss the state law claims on the ground that Plaintiff has failed to file a notice of claim within ninety days after the claim arose, as is required under New York law. *See* Def. Mot. at 21 (citing N.Y. Gen. Mun. L. § 50-e(1)(a)).

4

In deciding a motion to dismiss, a district court may consider "matters of which judicial notice may be taken." *Chambers*, 282 F.3d at 153; *Wims v. N.Y.C. Police Dep't*, No. 10-CV-6128, 2011 WL 2946369, at *3 (S.D.N.Y. July 20, 2011) (taking judicial notice of an individual's guilty plea). Here, it is undisputed that after Plaintiff filed this action, he pled guilty to the felony charge against him for criminal possession of a controlled substance in the fourth degree, N.Y. Penal Law § 220.09.06. *See* Decl. of Joseph Martullo (ECF No. 14) at Ex. A. The Court takes judicial notice of Plaintiff's conviction by guilty plea. Because he cannot allege that the criminal charges against him terminated in his favor, Plaintiff fails to state a claim for malicious prosecution. *See Poventud*, 750 F.3d at 130.

In opposition to Defendant's motion to dismiss, Plaintiff argues that he was coerced to plead guilty, and he annexes a motion that he states that he filed in state court on February 23, 2015, seeking to vacate his guilty plea.[3] *See* Pl. Opp. (ECF No. 19) at 17. If Plaintiff succeeds in having his conviction "reversed on direct appeal, expunged by executive order, or otherwise declared invalid," then any claim that he might have for malicious prosecution would accrue once the criminal proceedings have terminated in his favor. *See Heck*, 512 U.S. at 489 ("[A] cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor."). Because Plaintiff fails to plead facts stating a § 1983 claim for malicious prosecution, the Court grants Defendant's motion to dismiss this claim.[4]

---

[3] In the motion to vacate the conviction, Plaintiff appears to argue that the assistant district attorney forced him to plead guilty by "removing" his state court pleadings from the criminal record, including his "counter complaint," "motion judgment by default," "motion to compel motion for judgment by default," and "notice of rescission of order setting conditions of release." Pl. Opp. (ECF No. 19) at 18. Although courts have allowed a civil rights plaintiff to show that his plea was involuntary in his civil rights action where *habeas* relief had never been available to the plaintiff, *Unger v. Cohen*, 718 F. Supp. 185, 187 (S.D.N.Y. 1989), here Plaintiff has an opportunity to pursue a *habeas* petition. In any event, Plaintiff's motion does not demonstrate a basis for vacating the conviction.

[4] "Disposition of the case on *Heck* grounds, however, warrants only dismissal without prejudice, because the suit may be reinstituted should plaintiff's conviction be 'expunged by executive order, declared invalid ..., or called into question by a federal court's issuance of a writ of *habeas corpus*.'" *Amaker v. Weiner*, 179 F.3d 48, 52 (2d Cir. 1999) (quoting *Heck*, 512 U.S. at 487) (emphasis omitted).

B. **Fourth Amendment Claims: Unlawful Search and Seizure and False Arrest**

Plaintiff's allegations can be segmented into claims that police officers: (1) stopped him on the pretext that he failed to use his turn signal even though he *had* used the signal; (2) searched his car in violation of his Fourth Amendment rights; and (3) arrested him without probable cause to do so.

1. Unlawful Search Claims

The City of New York contends generally that where there has been a conviction, unlawful search claims are barred by *Heck*'s favorable termination rule. Def. Mem. (ECF No. 13) at 15. As other district courts have noted when faced with the same arguments made here, "*Heck*'s application to Plaintiff's claims is not as straightforward as the City suggests." *McCord v. City of New York*, No. 13-CV-2008, 2014 WL 2567108, at *2 (AJN) (S.D.N.Y. June 6, 2014). The Supreme Court clarified in *Heck* itself that:

> a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the §1983 plaintiff's still-outstanding conviction. Because of doctrines like independent source and inevitable discovery, *see Murray v. United States*, 487 U.S. 533, 539 (1988), and especially harmless error, *see Arizona v. Fulminante*, 499 U.S. 279, 307–308 (1991), such a § 1983 action, even if successful, would not necessarily imply that the plaintiff's conviction was unlawful.

*Heck*, 512 U.S. at 487, n.7. Put another way, "because the admission of unlawfully seized evidence does not always require a conviction to be set aside, a conclusion that evidence was unlawfully seized does not require the further conclusion that the plaintiff's conviction was invalid." *McCord*, 2014 WL 2567108, at *3; *see also Williams v. Ontario Cnty. Sheriff's Dep't*, 662 F. Supp. 2d 321, 329 (W.D.N.Y. 2009) ("[A] federal court's finding of a Fourth Amendment violation would not necessarily imply that a prior state conviction was unlawful if, despite the constitutional violation, the subject evidence was admissible based on such doctrines as independent source, inevitable discovery, and harmless error.").

Courts applying the *Heck* doctrine in circumstances such as this must assess "whether a prisoner's victory in in a § 1983 suit would *necessarily demonstrate* the invalidity of his conviction or sentence . . . ." *McKithen v. Brown,* 481 F.3d 89, 102 (2d Cir. 2007). "[T]hat a prisoner's success might be merely helpful or *potentially* demonstrative of illegal confinement is, under this standard, irrelevant." *Id.* Following this direction, district courts have frequently found that § 1983 actions targeting a single episode involving a single search, necessarily demonstrate the invalidity of a conviction based on that search. In support of this conclusion, district courts have observed that "the doctrines of independent source, inevitable discovery, and harmless error discussed in *Heck* are not applicable, [such as] where . . . the entire evidentiary basis for the charged offense derive[d] from a single episode involving a single search." *Clayton v. City of Poughkeepsie*, No. 06-CV-4881 (SCR), 2007 WL 2154196, at *4 (S.D.N.Y. June 21, 2007) (dismissing unlawful search claims as barred by *Heck* where entire criminal case turned on motion to suppress evidence from one search and plaintiff pled guilty immediately after the motion to suppress was denied); *Black v. Blackmun*, No. 11-CV-2372 (BMC) (ALC), 2011 WL 6019394, at *2 (E.D.N.Y. 2011) (where conviction hinged directly on the weapons procured during search, and motion to suppress was denied, an award of damages for an unlawful search would necessarily imply the invalidity of state court conviction); *Kaminski v. Hayes*, No. 3:06-CV-1524 (CFD), 2009 WL 3193621, at *6 (D. Conn. Sept. 30, 2009) (illegal search claim barred by *Heck* where it was "apparent that the entire evidentiary basis for the charged offenses . . . derive[d] from a single search that [was] now being challenged as part of a section 1983 action").

Here, it appears from the facts pleaded in the complaint that Plaintiff's conviction in *People v. Wilson*, No. 2013-NY-048728, for possession of narcotics stems solely from evidence obtained in the June 21, 2013, search of his vehicle—a single episode involving a single search. Under these circumstances, having pleaded guilty to the charges that he knowingly possessed narcotics, success

7

on Plaintiff's § 1983 claim that the search was unlawful would necessarily imply the invalidity of his conviction.[5]  Plaintiff's § 1983 claim that the search of his vehicle violated his Fourth Amendment rights is therefore barred under *Heck* and must be dismissed.

  2. Claim Based on Initial Traffic Stop

The Supreme Court has held that under the Fourth Amendment, it is constitutionally reasonable for the police to "stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause."  *United States v. Swindle*, 407 F.3d 562, 566 (2d Cir. 2005) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)) (some quotation marks omitted).  This form of investigative detention is known as a *Terry* stop.  *See Davis v. City of New York*, 902 F. Supp. 2d 405, 411 (S.D.N.Y. 2012) (citing *Terry v. Ohio*, 392 U.S. 1 (1968)); *see also United States v. Brignoni-Ponce*, 422 U.S. 873, 884 (1975) (investigative stop justified if officers are aware of "specific articulable facts, together with rational inferences from those facts that reasonably warrant suspicion" that the person to be stopped violated the traffic laws).  "Reasonable suspicion is an objective standard; hence, the subjective intentions or motives of the officer making the stop are irrelevant."  *United States v. Bayless*, 201 F.3d 116, 133 (2d Cir. 2000).

As with Plaintiff's unlawful search claim, success on Plaintiff's § 1983 claim that the police officers stopped him without reasonable suspicion that he had committed a traffic offense would necessarily imply the invalidity of his conviction.  If Plaintiff's initial detention were unlawful, then evidence of the narcotics found in Plaintiff's possession would be excluded from his criminal

---

[5] To recover compensatory damages, a civil rights plaintiff "must prove not only that the search was unlawful, but that it caused him actual, compensable injury, which . . . does not encompass the 'injury' of being convicted and imprisoned (until his conviction has been overturned)."  *Heck*, 512 U.S. at 487, n.7 (citation omitted).  Plaintiff also fails to allege that the search of his vehicle "caused him actual, compensable injury" other than "the 'injury' of being convicted and imprisoned" – which is not cognizable.  *Id.*

proceedings under the "fruit-of-the-poisonous-tree" doctrine.  *See Costello v. United States*, 365 U.S. 265, 280 (1961) ("[T]he 'fruit of the poisonous tree' doctrine excludes evidence obtained from or as a consequence of lawless official acts").  In light of the allegations that Plaintiff was arrested based solely on this discrete incident – which excludes the possibility that there was some independent source for the evidence or that any error in admitting unlawfully obtained evidence was harmless – the conviction would have to be set aside if the initial detention were unlawful.  Plaintiff thus cannot succeed in establishing that he was initially detained without reasonable suspicion without this requiring the further conclusion that his conviction must be set aside.

Thus, because success on this claim "would necessarily demonstrate the invalidity" of Plaintiff's conviction, *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005), before pursuing this claim, Plaintiff's conviction or sentence must be first "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such [a] determination, or called into question by a federal court's issuance of a writ of *habeas corpus*," *Heck*, 512 U.S. at 487.  Defendant's motion to dismiss this § 1983 claim under *Heck* is therefore granted.

    3. False Arrest Claim

A claim for false arrest under § 1983 incorporates the elements of a false arrest claim under state law.  *See Boyd v. City of New York*, 336 F.3d 72, 75 (2d Cir. 2003).  Under New York law, a plaintiff must show that "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (internal quotations and citations omitted).  To prevail on his § 1983 claims of false arrest relating to the June 21, 2013 arrest, Plaintiff must therefore demonstrate, among other elements, that

his confinement was not supported by probable cause. *See Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002).

Probable cause exists where the officers had knowledge "of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). "[W]hether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the [arresting] officers." *Id.* Plaintiff alleges that Defendant police officers stopped him on the pretext that he had not used his blinker, that one officer stated while he was examining Plaintiff's driver's license and registration that he smelled something, and that subsequent to a search of the vehicle, he was arrested for possession of narcotics and eventually pled guilty to criminal possession of a controlled substance in the fourth degree.

To the extent that Plaintiff's complaint can be understood as alleging that he was arrested after the discovery of narcotics in his vehicle, his allegations establish that there was probable cause for his arrest. *See, e.g., Townes v. City of New York*, 176 F.3d 138, 149 (2d Cir. 1999) (holding that even though police officers lacked probable cause to stop and search the plaintiff, "they certainly had probable cause to arrest him upon discovery of the handguns" in the car in which he was riding); *Morgan v. City of New York*, No. 12-CV-704, 2014 WL 3407714, at *4 (E.D.N.Y. July 10, 2014) (holding that even though plaintiff stated a claim that he was stopped without reasonable suspicion that criminal activity was afoot, discovery of knife constituted probable cause to arrest, defeating plaintiff's false arrest claim); *Gannon v. City of New York*, 917 F. Supp. 2d 241, 243 (S.D.N.Y. 2013) (discovery of weapons provided probable cause to arrest and plaintiff could not pursue § 1983 claim for false arrest even where criminal charges were dismissed because search was illegal). The discovery of narcotics establishes the existence of probable cause and defeats Plaintiff's claim for false arrest.

Moreover, a successful § 1983 claim for false arrest in this case would "negate an element of the offense of which he has been convicted." *Heck,* 521 U.S. at 487, n.6. "[A] conviction of the plaintiff following the arrest is viewed as establishing the existence of probable cause." *Cameron v. Fogarty*, 806 F.2d 380, 387 (2d Cir. 1986). Thus, "where the civil rights plaintiff has been convicted of the offense for which he was arrested, . . . the fact of that conviction [i]s conclusive evidence of the good faith and reasonableness of the officer's belief in the lawfulness of the arrest." *Id.* This does not require Plaintiff to have been convicted of "exactly the same charge for which he was arrested." *Barmapov v. Barry,* No. 09-CV-3390 (RRM), 2011 WL 32371, at *4 n.5 (E.D.N.Y. 2011) (relying on *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006)). The Court need only consider whether "as a total transaction . . . the activity forming the basis for the arrest is the same as the activity to which [Plaintiff] pleaded guilty." *Id.* Plaintiff's guilty plea to charges that he knowingly possessed narcotics is a complete defense to his false arrest claim and conclusively establishes that there was probable cause for his arrest for possession of narcotics.[6] The Court therefore grants Defendant's motion to dismiss Plaintiff's § 1983 claim for false arrest.

### C. Municipal Liability Under § 1983

Defendant City of New York also moves to dismiss all of Plaintiff's § 1983 claims on the ground that it may only be held accountable if a municipal "custom or policy" caused the deprivation of Plaintiff's rights.[7] *See Monell*, 436 U.S. at 694 (holding that "this case unquestionably

---

[6] The Court need not reach Defendant's argument that Plaintiff is collaterally estopped from relitigating whether there was probable cause for his arrest. *See Butron v. Cnty. of Queens Police Dept. 110 Precinct*, No. 94-CV-2675, 1996 WL 738525, at *2 (E.D.N.Y. Dec. 23, 1996) ("Simply, federal courts, in false arrest actions under section 1983, should not be burdened with a collateral estoppel factual inquiry in the face of a guilty plea."); *see also Allison v. Farrel*, No. 97-CV-2247, 2002 WL 88380, at *6 (DAB) (Jan. 22, 2002) ("[T]he collateral estoppel inquiry involving a false arrest claim "requires a detailed examination of the record in the prior state criminal case. . . . [T]he 'detailed inquiry' in the context of a plea would definitely require consideration of the charging instrument and the transcript of the plea allocution.").

[7] Plaintiff may be attempting to raise some additional § 1983 claim. For example, Plaintiff mentions in passing in the complaint that Defendants violated his rights under the Equal Protection Clause, *see* Compl. at 4, though neither party explicitly refers to such claims in the motion papers. The Court therefore considers Defendant's additional argument for dismissal of Plaintiff's § 1983 claims. Because the Court concludes that Plaintiff fails to allege any facts in his complaint

involves official policy as the moving force of the constitutional violation"). To state a claim against the City, Plaintiff must both "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury" and "demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cnty. Comm'rs of Bryan Cnty., OK v. Brown*, 520 U.S. 397, 403-04 (1997).

Plaintiff's complaint is devoid of factual allegations about liability on the part of the City. Plaintiff's allegations regarding municipal liability consist entirely of "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action." *Twombly*, 550 U.S. at 555. For example, Plaintiff alleges that Defendants are:

> devising, implementing, enforcing, adopting, sanctioning and ratifying a policy, practice and/or custom of (a) failing to properly screen, train, and supervise NYPD officers; (b) failing to adequately monitor and discipline the NYPD and its officers; and (c) encouraging, sanctioning and failing to rectify the NYPD's constitutional abuses" and that he was deprived of his rights "as a direct and proximate result.

Compl. at 14. These boilerplate recitations of the elements of municipal liability, without any factual allegations, are wholly insufficient to state a claim of liability on the part of the City of New York for any claim under § 1983.

Plaintiff contends that "Defendant City is liable to Plaintiff under the doctrine of *respondeat superior*." Compl. at 15. This argument is unavailing because it is well established that there is no *respondeat superior* liability under § 1983, and the City of New York is liable under § 1983 only for its own actions. *Monell*, 436 U.S. at 694. Plaintiff thus fails to plead adequately that the City of New York bears any responsibility for his initial traffic stop, and the Court therefore grants the City of New York's motion to dismiss this claim against it.

Moreover, given that Plaintiff cannot state a cognizable claim for any violation of his constitutional rights unless his conviction is invalidated, he also cannot state a claim that a City

---

showing that the City of New York is responsible for any violation of Plaintiff's rights, *see Monell*, 436 U.S. at 694, the Court also dismisses any Equal Protection claim that Plaintiff may be asserting.

policy or custom caused the violation of his rights. *See, e.g., Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (*Monell* "*extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation."); *Rankel v. Town of Somers*, 999 F. Supp. 2d 527, 550 (S.D.N.Y. 2014) ("[A]bsent an underlying constitutional violation, a *Monell* claim cannot lie."). It would therefore be futile to grant Plaintiff leave to amend to state a claim against the City of New York unless his conviction is invalidated.

### D. State Law Claims

Section 50–e of the General Municipal Law requires a plaintiff to file a notice of claim before commencing an action against a municipality for a claim sounding in tort and within ninety days of the incident giving rise to the claim. N.Y. Gen. Mun. Law § 50–e(1)(a). A plaintiff must plead in the complaint that: (1) the notice of claim was served; (2) at least thirty days have elapsed since the notice of claim was filed and before the complaint was filed; and (3) in that time the defendant has neglected to or refused to adjust or to satisfy the claim. *See* N.Y. Gen. Mun. Law § 50–i. "To survive a motion to dismiss, a plaintiff must affirmatively plead that a notice of claim was filed." *Naples v. Stefanelli*, 972 F. Supp. 2d 373, 390 (E.D.N.Y. 2013) (citing N.Y. Gen. Mun. Law § 50–i(1)(b)). "Absent a showing of such a notice of claim, the complaint may be dismissed for failure to state a cause of action." *Horvath v. Daniel*, 423 F. Supp. 2d 421, 423 (S.D.N.Y. 2006) (citing *Brown v. Metro. Transp. Auth.*, 717 F. Supp. 257, 259 (S.D.N.Y. 1989)). Plaintiff's state law tort claims against the City of New York are therefore dismissed without prejudice because Plaintiff has failed to plead that he filed a notice of claim.

### E. Leave to Amend Complaint

"When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999). Leave to amend should be

granted unless there is evidence of undue delay, bad faith, undue prejudice, or futility. *See Milanese v. Rust–Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001). For the reasons articulated above, the Court concludes that it would be futile to grant Plaintiff leave to replead his § 1983 claims for malicious prosecution, false arrest, and unlawful search or seizure unless his conviction is invalidated. The Court therefore declines to grant Plaintiff leave to amend his complaint.

## CONCLUSION

For the foregoing reasons, the City of New York's motion to dismiss (ECF No. 12) is granted and Plaintiff's complaint is dismissed in its entirety. The Clerk of Court is instructed to enter judgment accordingly and to close the case.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: April 23, 2015
New York, New York

_____
GREGORY H. WOODS
United States District Judge